Eastern District of Kentucky
FILED

JAN 28 2026

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:25-CR-38-REW-MAS**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **PLEA AGREEMENT**

**IVORY JOE PRUITT** **DEFENDANT**

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud.

2. The essential elements of Count 1 are:

(a) Two or more people agreed to try to accomplish a common and unlawful plan to:

i. Devise a scheme to defraud in order to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises, and, for the purposes of executing the scheme or attempting to do so, transmitted or caused to be transmitted, any writing, signal, or sound by means of wire communication in interstate commerce, and

(b) The defendant had the intent to defraud.

(c) The Defendant knew about the scheme's unlawful purpose and willfully joined in it.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) From at least, on or about August 15, 2022, through, on or about May 20, 2024, IVORY JOE PRUITT agreed to participate, and join, in a scheme to defraud. Participants in the scheme to defraud included Yoshi Keori Williams, Daniel Rashawd Sanchious, Tashawn Shamal Canegata, Kellie Marie Miller, and others not named in the indictment. PRUITT recruited Williams and Miller, and others, to join the conspiracy, and controlled how, when, and where, some of the fraud was committed. IJP RJ MAS

(b) To accomplish the scheme to defraud, members of the conspiracy drove rented vehicles to Florida, Alabama, Georgia, North Carolina, Kentucky, Tennessee, Louisiana, Mississippi, and other states, wherein members of the conspiracy entered hospital or university buildings. Once inside the buildings, members of the conspiracy stole wallets, from at least 30 people, containing debit and credit cards, and personal identifying information. Members of the conspiracy then used, or attempted to use, the debit and credit cards at local retailers to purchase items valuing at least $180,000, thereby transmitting, or causing to be transmitted, signals by means of wire communication in interstate commerce. In some instances, the stolen personal identifying information was used, without lawful authority, to open Sam's Clubs accounts which members of the conspiracy used to complete purchases at Sam's Clubs.

(c) On or about August 15, 2022, PRUITT entered Ahuja Medical Center in Beachwood, Ohio, wherein he stole wallets containing credit and debit cards belonging to R.H. and T.M. Thereafter, Williams used, or attempted to use, the stolen credit and debit cards at Wal-Mart to make purchases valuing over $1000, thereby transmitting, or causing to be transmitted, signals by means of wire communication in interstate commerce. While committing the thefts, PRUITT and Williams traveled together in a Jeep Compass rented by PRUITT.

(d) On or about January 23, 2023, PRUITT entered South Lake Hospital in Clermont, Florida and stole a wallet containing credit and debit cards, and personal identifying information, belonging to D.M. Thereafter, Miller used, or attempted to use, the stolen credit and debit cards to make purchases at Sam's Club valuing over $6000, thereby transmitting, or causing to be transmitted, signals by means of wire communication in interstate commerce.

(e) D.M.'s personal identifying information was used to create a Sam's Club account, which was transferred to members of the conspiracy, including Williams, Canegata, and Sanchious, to complete purchases at Sam's Clubs in Georgia, Tennessee, Alabama, Illinois, Florida, Kentucky, and other states. Specifically, on or about February 23, 2023, Sanchious and Williams entered buildings at Auburn University in Auburn, Alabama, and stole wallets, containing credit and debit cards and personal identifying information, belonging to C.S. and M.R. Thereafter, Sanchious, Williams, and Canegata used, or attempted to use, the stolen credit and debit cards at Sam's Club and Wal-Mart to make purchases valued over $2000. When completing the purchases, a member of the conspiracy used the Sam's Club account with the personal identifying information of D.M., without lawful authority, to complete the purchases.

(f) On or about January 25, 2023, PRUITT entered HCA Florida Capital Hospital in Tallahassee, Florida, wherein he stole a wallet containing debit and credit cards, and personal identifying information, belonging to J.S. J.S.'s personal identifying information was then used to create a Sam's Club account, which was transferred to members of the conspiracy, including Williams and Miller, to complete purchases at Sam's Clubs in Florida, Tennessee, Louisiana, North Carolina, Kentucky, Illinois, and other states. Specifically, on or about March 8, 2023, Miller used credit cards belonging to N.S., which were stolen from Central Baptist, in Fayette County, in the Eastern District of Kentucky, to make a purchase, in the amount of $3122.84, at Sam's Club in Nicholasville, Kentucky, thereby transmitting, or causing to be transmitted, signals by means of wire communication in interstate commerce. Miller used the Sam's Club account with J.S.'s personal identifying information to complete the purchase.

(g) On or about January 30, 2023, a wallet, containing credit and debit cards, belonging to C.B. was stolen from Rockledge Regional Medical Center in Cocoa, Florida. Thereafter, PRUITT used a credit card belonging to C.B. to make a purchase, in the amount of $123.50, at a 7-11, thereby transmitting, or causing to be transmitted, signals by means of wire communication in interstate commerce. PRUITT transferred the stolen debit and credit cards to Miller, who then used the stolen credit and debit cards to make purchases at Wal-Mart and Lowe's valuing over $2000, thereby transmitting, or causing to be transmitted, signals by means of wire communication in interstate commerce.

(h) On or about March 22, 2023, PRUITT entered Novant Health in Wilmington, North Carolina, wherein he stole a wallet containing credit and debit cards belonging to B.P. PRUITT transferred the stolen credit and debit cards to Miller, and an unknown female, who then used the stolen credit and debit cards to make purchases, at Sam's Club valuing over $2000, thereby

transmitting, or causing to be transmitted, signals by means of wire communication in interstate commerce.

(i) PRUITT intended to defraud.

4. The statutory punishment for Count 1 is imprisonment for not more than 20 years, a fine of not more than $250,000 or twice the gain or loss, whichever is greater, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2024, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all the conduct during the dates in the Indictment.

(c) Pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is 7.

(d) Pursuant to U.S.S.G. § 2B1.1(b)(1)(F), increase the offense level by 10 levels because the loss exceeded $150,000.

(e) Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), increase the offense level by 2 levels because the offense involved 10 or more victims.

(f) Pursuant to U.S.S.G. § 2B1.1(b)(11)(C)(i), increase the offense level by 2 levels because the offense involved the unlawful transfer or use of any means of identification unlawfully to produce or obtain any other means of identification.

(g) The parties disagree as to the application of U.S.S.G. § 3B1.1(a). The United States believes the Defendant's offense level should increase by 4 levels because the Defendant was an organizer or leader in the criminal activity. The Defendant disagrees.

(h) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(i) Pursuant to U.S.S.G. § 5E1.1, restitution will be ordered.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The Defendant also consents to the imposition of a forfeiture money judgment in the amount of proceeds that the Defendant obtained as a result of the offense to which he is pleading guilty. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2. If the Defendant fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C.

§ 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his/her right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11. The Defendant agrees to pay restitution in the amount and to the victims as ordered at sentencing, pursuant to 18 U.S.C. § 3663(a)(3). The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by Defendant in the factual basis. The Defendant further agrees to be held jointly and severally liable for restitution with any other defendant who contributed to the loss of the victim or victims.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a

financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should

not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

15. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. McCAFFREY
FIRST ASSISTANT,
UNITED STATES ATTORNEY

Date: 1/20/2026 By: [signature]

Andrea L. Mattingly Williams
Assistant United States Attorney

Date: 1-19-26 [signature]

Ivory Joe Pruitt
Defendant

Date: 1/19/26

Rachel Yavelak
Attorney for Defendant